

**KN4 / ALL**
**Transmittal Number: 22521858**
**Date Processed: 01/05/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Kristen Nicastro<br>TD Bank, N.A.<br>3000 Atrium Way<br>Fl 4<br>Mount Laurel, NJ 08054-3909 |
| **Electronic copy provided to:** | Elise Green-Mail Code: NJ5-336-400<br>Lisa Johnson |

| | |
|---|---|
| **Entity:** | TD Bank US Holding Company<br>Entity ID Number  2426784 |
| **Entity Served:** | TD Bank US Holding Company |
| **Title of Action:** | Elizabeth Felder vs. TD Bank US Holding Company |
| **Matter Name/ID:** | Elizabeth Felder vs. TD Bank US Holding Company  (10798542) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Lexington County Court of Common Pleas, SC |
| **Case/Reference No:** | 2020-CP-32 |
| **Jurisdiction Served:** | South Carolina |
| **Date Served on CSC:** | 01/04/2021 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Elizabeth Felder<br>803-409-9119 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
)  ELEVENTH JUDICIAL CIRCUIT
COUNTY OF LEXINGTON )  2020 DEC 17 PM 4: 49
)
Elizabeth Felder, )  LISA C. A. No. 2020-CP-32-
)  CLERK OF COURT
          Plaintiff, )  LEXINGTON, SC
     vs. )
)
TD Bank US Holding Company, )        **SUMMONS**
)        (Jury Trial Demanded)
          Defendant. )
)

### TO THE DEFENDANT ABOVE NAMED:

A lawsuit has been filed against you. Within thirty days (thirty-five days, if served by mail or through a person designated by statute to accept service) after service of this Summons on you (not counting the day you receive it), you must file with the court and serve on the Plaintiff an answer to the attached Complaint or a motion under Rule 12 of the South Carolina Rules of Civil Procedure. If you fail to do so, judgment by default will be entered against you for the relief demanded in the Complaint.

Submitted this 17th day of December, 2020.

Elizabeth Felder
Email: lizzyfelder@icloud.com
318 Heatherstone Road
Columbia, South Carolina 29212
803-409-9119 (Telephone)
*PLAINTIFF*

FILED

2020 DEC 1 ELEVENTH JUDICIAL CIRCUIT

LISA COMER
CLERK OF A No. 2020-CP-32-
LEXINGTON SC

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) ELEVENTH JUDICIAL CIRCUIT |
| COUNTY OF LEXINGTON | ) |
| | ) |
| Elizabeth Felder, | ) C.A. No. 2020-CP-32- |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) **COMPLAINT** |
| TD Bank US Holding Company, | ) (Jury Trial Demanded) |
| | ) |
| Defendant. | ) |
| | ) |

The Plaintiff, Elizabeth Felder ("Plaintiff"), brings this action against the Defendant, TD Bank US Holding Company ("Defendant"), based on the allegations set forth below.

## PARTIES

1.       Plaintiff is a citizen and resident of Columbia, Richland County, South Carolina.

2.       Upon information and belief, Defendant is a corporation organized under the laws of Delaware, with a principal place of business in Cherry Hill, New Jersey, and doing business in Lexington County, South Carolina.

## JURISDICTION AND VENUE

3.       This Court has subject-matter jurisdiction over the claims in this lawsuit under article V § 11 of the South Carolina Constitution and South Carolina Code § 14-5-350.

4.       This Court has personal jurisdiction over Defendant because it transacts business in South Carolina.

5.       Venue is proper in this circuit under South Carolina Code § 15-7-30 because Defendant's acts and/or omissions that are the subject matter of this action occurred in Lexington County, South Carolina.

1

6.      Plaintiff has exhausted her administrative remedies and received her Notice of

Right to Sue from the U.S. Equal Employment Opportunity Commission (EEOC) on or about

September 18, 2020. This lawsuit is being filed in a timely manner, within ninety (90) days of

the date Plaintiff received her Notice of Right to Sue.

## FACTS

7.      Plaintiff is a 53-year-old African-American female.

8.      Plaintiff became employed by Defendant on or about February 26, 2018, as a

Loan Processor IV and worked in the same position until Defendant terminated her on or about

July 24, 2019.

9.      Throughout the time of Plaintiff's employment with Defendant, her job

performance met or exceeded the reasonable expectations of her supervisor(s) and Defendant.

10.     In July 2018, Plaintiff's team under the Pod manager Renee Lumpkin was the last

team scheduled for training on the new encompass system.

11.     Brittny Lopez (Hispanic), Crystal McAdams (African-American), and Plaintiff

were unfairly treated, not given a week after training to get acclimated in the new system. Each

of them was given 18 loans in encompass, while still receiving loans in the old Unifi system.

12.     Dropping that many loans on an individual in the new or old system has never

been done in the history of the company.

13.     Around this time, Brittny Lopez was fired, and Crystal McAdams went out on

two weeks' leave due to panic attacks. Meanwhile, Plaintiff was placed on medical leave for 3

months as a result of vertigo attacks.

14.     Plaintiff went out of work on October 9, 2018, and returned to work on January 2,

2019.

2

15.    After returning to work, Plaintiff started inquiring about her raise.

16.    Renee Lumpkin responded to Plaintiff's question 3 weeks later and replied that Plaintiff was not getting a raise.

17.    After reading the first falsified performance review, Plaintiff contacted HR Rhonda Midgette.

18.    Subsequently, the review was overturned.  HR Mrs. Midgette granted Plaintiff's raise and bonus to be paid.  Plaintiff was also informed that she would be removed from Renee Lumpkin's Team.

19.    On or about February 7, 2019, Plaintiff received an email from Tracy E. Peele with the AML Department, which stated that Plaintiff's name was received as an interested participant in the "AML Information Session," formerly known as the "AML Manager Job Shadow Program."  The only two employees on the invitation from the entire processing team were Plaintiff and Brian Homeyer, a Caucasian male.

20.    Renee Lumpkin approved Plaintiff's invitation, and then turned around and denied it stating that Roberta Williams would need to approve it because Plaintiff would be moving to Roberta Williams' team.

21.    Subsequently, Roberta Williams denied Plaintiff the opportunity to attend. However, Brian Homeyer got the job.

22.    Plaintiff contacted HR Rhonda to advise her as to the inappropriate and discriminatory employment decisions made by Renee and Roberta.

23.    In response, Plaintiff was informed that she was overreacting and that Roberta was not like Renee.

3

24.    HR Rhonda Midgette refused to see this was to stop Plaintiff from posting out of the department.

25.    On March 3, 2019, Plaintiff moved over to Roberta Williams' team.

26.    Plaintiff again contacted HR Rhonda Midgette to express her concerns about moving to Roberta William's team because Roberta and Renee were "smoke buddies," who smoked together every day several times a day, and they were under the same Manager Mark Sgromolo.

27.    Once again, Plaintiff was informed that Roberta had not been informed about what had occurred on Renee's team and this should not be a problem.

28.    Plaintiff and Roberta Williams met with HR- Rhonda Midgette and were informed that Plaintiff was being placed on a probationary period.

29.    Plaintiff then noticed that Roberta was not assigning any file to her in the regular rotation. Further, the files Plaintiff had completed were moved to another processor in an obvious attempt to create an appearance that Plaintiff was not completing any files.

30.    Additionally, Plaintiff started noticing that she was being physically attacked by Roberta Williams in retaliation on a daily basis.

31.    Plaintiff told Mr. Mark Sgromolo that Ms. Williams had been reassigning Plaintiff's completed files. He advised Ms. Williams not to reassign any of Plaintiff's files.

32.    Before Roberta left for vacation on April 12, 2019, she placed Plaintiff on a probation status where Plaintiff was not allowed to post out of the department. Further, she made a lot of false accusation in the performance review. Plaintiff refused to sign it. In response, Roberta made a copy, signed it, and left a copy on the printer on the production floor for all employees to see while she was out of the office for a week.

4

33.    The review Roberta left on the copier was brought over to Plaintiff's desk by a friend, Debora Elam, who stated it had been left on the copier.

34.    On April 19, 2019, Plaintiff again contacted HR Rhonda Midgette and complained about the incident in which Roberta left a copy of Plaintiff's review on the copy machine the entire week she was out on vacation.

35.    While Roberta was out of the office, Joy Schofield started assigning loans to Plaintiff in the regular rotation, and when Roberta returned to the office April 22, 2019, Plaintiff had 30 loans in her pipeline, all of which were ready for closing in a timely manner.

36.    Roberta continued with her daily psychology attacks toward Plaintiff in retaliation as usual. Plaintiff continued to disregard her unprofessional behavior in the workplace.

37.    On May 20, 2019, Plaintiff was called to a meeting with Department Manager Mark Sgromolo and HR Rhonda Midgett. During that meeting, Plaintiff was informed that her position was being terminated effective July 24, 2019. Plaintiff was further informed that Renee Lumpkin's position was being terminated as well. During this time, Plaintiff continued to receive psychological attacks from Roberta on a daily basis.

38.    On June 5, 2019, Plaintiff sent an email to Roberta Williams requesting time off from June 20, 2019, through June 26, 2019. She explained that her daughter had a volleyball tournament in Orlando, Florida. Plaintiff did not receive a response.

39.    Plaintiff sent a second request on June 10, 2019, asking for the same time off.

40.    Roberta denied Plaintiff's request, stating that one employee, Annabelle Gonzolas, was already off that week, although the company policy allowed two employees in one team to be off at the same time.

5

41.     On the very same day, a Skype team meeting was held with the entire team processors and underwriters. In that meeting, Roberta encouraged 3 Caucasian underwriters to take time off at the same time during the week of June 17, 2019, through June 21, 2019. Todd Baron (Caucasian male), Denice (Caucasian female), and Jennifer Shwed (Caucasian female) told her that they were taking time off.

42.     Once again, Plaintiff contacted HR and spoke with HR Representative Jennette Elliott on June 12, 2019.

43.     Plaintiff told Ms. Elliott that she felt that she was being discriminated against. Plaintiff explained that she was being denied time off, while at least 3 Caucasian underwriters were being encouraged by Roberta Williams to take time off.

44.     In response, Mrs. Elliott informed Plaintiff that she would be in touch with Roberta and that Plaintiff should expect to hear from Roberta Williams shortly.

45.     On June 17, 2019, Plaintiff received an email from Roberta Williams in reference to her PTO request, stating that her Manager Mark Sgromolo would be in touch with Plaintiff to accommodate her request for time off. Plaintiff took the vacation time she requested.

46.     When Plaintiff returned to work on June 27, 2019, she had a meeting popped up on her computer to meet with Michael Masceri, Mark Sgromolo, and Roberta Williams.

47.     Plaintiff declined the meeting and requested an HR Representative to be present.

48.     A meeting was scheduled for later that day.

49.     Upon information and belief, the managers were attempting to fire Plaintiff in the absence of an HR Representative.

6

50.    The HR Representative Rhonda Midgette asked Plaintiff whether she knew why she was asked to attend that meeting. Additionally, Mrs. Midgette stated that the management had communicated to her that Plaintiff had taken time off without authorization.

51.    Plaintiff informed Mrs. Midgette that she had received an email from Roberta on June 17, 2019, stating that Mark Sgromolo was going to accommodate her request for time off.

52.    Mrs. Midgette asked to see a copy of the email. Plaintiff provided her with a copy of it, and she advised everyone in the room and on the call Plaintiff had less than 30 days left until her last day per the severance package offered, and everyone should try to get through the period of less than 30 days.

53.    Upon information and belief, HR was not informed of the email Plaintiff had received, or HR was misinformed that Plaintiff had taken time off without authorization.

54.    Plaintiff told Mrs. Midgette that she was being constantly harassed daily ever since placed in Roberta's team.

55.    Mr. Masceri asked Rhonda, the HR Representative, whether Plaintiff was being subjected to the managers' harassment.

56.    In response, Mrs. Midgette stated that the issue was the email Roberta sent to Plaintiff stating Mark Sgromolo was going to accommodate Plaintiff's request.

57.    The email Rhonda Midgette was not informed had existed.

58.    Mrs. Midgette asked Plaintiff to return to her desk.

59.    Plaintiff left the room and left the managers in the meeting with HR.

60.    On the following day, Plaintiff called Rhonda Midgette and stated she could not believe the management was trying to fire her and take her severance away when less than 30 days had remain before her last day.

7

61.    Upon information and belief, Plaintiff was the only employee offered a severance package on Roberta's team.

62.    Subsequently, Plaintiff learned that her position was later filled by another processor.

63.    Upon information and belief, Renee Lumpkin and the members of her entire team were terminated.

64.    Also upon information and belief, Mark Sgromolo resigned.

## FIRST CAUSE OF ACTION
### (Race Discrimination Under Title VII of the Civil Rights Act of 1964 ("Title VII"))

65.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

66.    Plaintiff is a member of a protected class under Title VII.

67.    Plaintiff suffered an adverse employment action when she became subjected to unfavorable working conditions, as well as when she was denied a fair opportunity for leave time equal to that provided to similarly-situated Caucasian employees, and subjected to unjustified harassment by her supervisor(s).

68.    At all times relevant to this Complaint, Plaintiff suffered adverse employment actions despite the fact that she was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

69.    The circumstances at the time of Defendant's adverse employment actions against Plaintiff gave rise to an inference of unlawful discrimination in that at least one other similarly-situated employee of a difference race was treated more favorably than Plaintiff, and Plaintiff's

race was a determinative or motivating factor in Defendant's decision to take adverse employment actions against Plaintiff.

70.    Defendant's adverse employment actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's federally protected rights and constituted a knowing and willful violation of Title VII, which entitles Plaintiff to punitive damages.

71.    As a direct result and consequence of Defendant's unlawful discrimination, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits. Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages. Under Title VII, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## SECOND CAUSE OF ACTION
### (Race Discrimination Under 42 U.S.C. § 1981)

72.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

73.    Plaintiff is a member of a protected class under 42 U.S.C. § 1981.

74.    Plaintiff suffered an adverse employment action when she became subjected to unfavorable working conditions, as well as when she was denied a fair opportunity for leave time equal to that provided to similarly-situated Caucasian employees, and subjected to unjustified harassment by her supervisor(s).

75.    At all times relevant to this Complaint, Plaintiff suffered adverse employment actions despite the fact that she was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

9

76.     The circumstances at the time of Defendant's adverse employment actions against Plaintiff gave rise to an inference of unlawful discrimination in that at least one other similarly-situated employee of a difference race was treated more favorably than Plaintiff, and Plaintiff's race was a determinative or motivating factor in Defendant's decision to take adverse employment actions against Plaintiff.

77.     Defendant's adverse employment actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's federally protected rights and constituted a knowing and willful violation of 42 U.S.C. § 1981, which entitles Plaintiff to punitive damages.

78.     As a direct result and consequence of Defendant's unlawful discrimination, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits. Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages. Under § 1981, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## THIRD CAUSE OF ACTION
### (Retaliation Discrimination Under Title VII)

79.     Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

80.     When Plaintiff protested and complained about Defendant's discriminatory employment practices and filed a charge of discrimination with the South Carolina Human Affairs Commission (SHAC) and the U.S. Equal Employment Opportunity Commission (EEOC), she engaged in a protected activity under 42 U.S.C. § 1981.

10

81.     In responding to Plaintiff's protests and complaints, Defendant took further adverse employment actions by continuing to subject Plaintiff to unfavorable working conditions, discouraging her from further complaining about its discriminatory employment practices, denying her a fair opportunity for equal and non-hostile work environment, and terminating her employment.

82.     Such retaliatory adverse employment actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's federally protected rights and constituted a knowing and willful violation of 42 U.S.C. § 1981, which entitles Plaintiff to punitive damages.

83.     As a direct result and consequence of Defendant's retaliatory adverse employment actions, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits.  Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages.  Under 42 U.S.C. § 1981, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

### FOURTH CAUSE OF ACTION
### (Retaliation Discrimination Under 42 U.S.C. § 1981)

84.     Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

85.     When Plaintiff protested and complained about Defendant's discriminatory employment practices and filed a charge of discrimination with the South Carolina Human Affairs Commission (SHAC) and the U.S. Equal Employment Opportunity Commission (EEOC), she engaged in a protected activity under 42 U.S.C. § 1981.

11

86.    In responding to Plaintiff's protests and complaints, Defendant took further adverse employment actions by continuing to subject Plaintiff to unfavorable working conditions, discouraging her from further complaining about its discriminatory employment practices, denying her a fair opportunity for equal and non-hostile work environment, and terminating her employment.

87.    Such retaliatory adverse employment actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's federally protected rights and constituted a knowing and willful violation of 42 U.S.C. § 1981, which entitles Plaintiff to punitive damages.

88.    As a direct result and consequence of Defendant's retaliatory adverse employment actions, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits.  Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages.  Under 42 U.S.C. § 1981, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

### FIFTH CAUSE OF ACTION
**(Disability Discrimination Under the Americans with Disabilities Act ("the ADA"))**

89.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

90.    Plaintiff has a disability within the meaning of the ADA, was regarded as having such a disability, and/or had a history of such a disability.

91.    At all times relevant to this Complaint, Plaintiff was a qualified individual able to perform the essential functions of her job as a Loan Processor.

12

92.     Plaintiff's disability and/or medical condition was a determinative factor in Defendant's decision to take adverse employment actions against Plaintiff.

93.     Defendant discriminated against Plaintiff on the basis of her disability within the meaning of the ADA by taking such adverse employment actions for false and pretexual reasons.

94.     Defendant's discrimination against Plaintiff was a knowing and willful violation of the ADA, which entitles Plaintiff to punitive damages.

95.     As a direct result and consequence of Defendant's unlawful discrimination, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits. Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages. Under the ADA, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## SIXTH CAUSE OF ACTION
### (Failure to Provide a Reasonable Accommodation Under the ADA)

96.     Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

97.     Plaintiff has a disability within the meaning of the ADA, was regarded as having such a disability, and/or had a history of such a disability.

98.     Plaintiff informed Defendant of her medical conditions and requested an accommodation for her conditions.

99.     There existed an accommodation available to Defendant that would have been effective to Plaintiff's situation and would not have posed an undue hardship to Defendants, *i.e.*,

13

modifying Plaintiff's work schedule, relieving Plaintiff from additional job duties, allocating job duties equally to multiple employees, etc.

100.    Defendant failed to provide a reasonable accommodation for Plaintiff's disability. Instead, it discriminated against Plaintiff by taking adverse employment actions against Plaintiff.

101.    Defendant's failure to provide a reasonable accommodation for Plaintiff was a knowing and willful violation of the ADA, which entitles Plaintiff to punitive damages.

102.    As a direct result and consequence of Defendant's failure to provide a reasonable accommodation for Plaintiff's disability, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits. Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## SEVENTH CAUSE OF ACTION
### (Retaliation Discrimination Under the ADA)

103.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

104.    When Plaintiff requested a reasonable accommodation for her disability and opposed and/or complained about Defendant's failure to provide a reasonable accommodation for her disability, she engaged in a protected activity under the ADA.

105.    In responding to Plaintiff's request for a reasonable accommodation for her disability and her opposition to and/or complaint about Defendant's discriminatory employment practice, Defendant took an adverse employment action by making unjustified negative evaluations of Plaintiff's job performance and demeanor, subjecting Plaintiff to an unfavorable

14

and hostile work environment, and continuing to ignore Plaintiff's repeated requests for a reasonable accommodation for her disability.

106.     As a direct result and consequence of Defendant's retaliatory adverse employment action, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits.  Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages.  Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in her favor against Defendant as follows:

1.     Actual, compensatory, and special damages in an amount to be determined, including but not limited to back pay, front, pay, anxiety, emotional distress, inconvenience, loss of enjoyment of life;

2.     Punitive damages under Title VII and 42 U.S.C. § 1981 in an amount adequate to punish Defendant for its reckless behavior and sufficient to deter it and others from similar conduct in the future;

3.     Punitive damages under the ADA in an amount adequate to punish Defendant for its reckless behavior and sufficient to deter it and others from similar conduct in the future;

4.     Attorney's fees, costs, and interest; and

5.     Such other and further relief as this Court and jury deem just and proper.

*[SIGNATURE BLOCK ON THE FOLLOWING PAGE]*

15

Respectfully submitted,

Elizabeth Felder
Email: lizzyfelder@icloud.com
318 Heatherstone Road
Columbia, South Carolina 29212
803-409-9119 (Telephone)
*PLAINTIFF*

Columbia, South Carolina

December 17, 2020

16



 

U.S. POSTAGE PAID
FCM LG ENV
IRMO, SC
29063
DEC 31, 20
AMOUNT

**$8.20**

29169    R2305K138169-07

**FROM:**

Elizabeth Felder
318 Heatherstone Road
Columbia SC 29212

**TO:**

Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

**Utility Mailer**
**10 1/2" x 16"**



| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF LEXINGTON | ) | ELEVENTH JUDICIAL CIRCUIT |
| | ) | |
| Elizabeth Felder, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2020-CP-32-4181 |
| | ) | |
| TD Bank US Holding Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING NOTICE OF REMOVAL

TO:     Elizabeth Felder
        318 Heatherstone Road
        Columbia, South Carolina 29212

        The Honorable Lisa M. Comer
        Lexington County Clerk of Court
        205 East Main Street, Suite 128
        Lexington, South Carolina 29072

PLEASE TAKE NOTICE that the Defendant in the above-captioned action has, on the 2nd

day of February, 2021, filed its Notice of Removal in the Office of the Clerk of the United States

District Court for the District of South Carolina, Columbia Division.  Pursuant to 28 U.S.C. §

1446(d), the Court of Common Pleas for Lexington County, South Carolina shall proceed no

further unless or until the case is remanded.

Dated this 2nd day of February, 2021.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By:    /s/Lucas J. Asper
       Lucas J. Asper
       M. Brooks Miller

300 North Main Street, Suite 500
Greenville, South Carolina 29601
Phone: (864) 271-1300
Fax: (864) 235-4754
lucas.asper@ogletree.com
brooks.miller@ogletree.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing Notice of Filing Notice of Removal has been served on Plaintiff Elizabeth Felder by depositing a copy hereof in the U.S. Mail, postage prepaid, on the 2nd day of February, 2021, to her address of record as shown:

Elizabeth Felder
318 Heatherstone Road
Columbia, South Carolina 29212


/s/Lucas J. Asper

2